486 So.2d 616 (1986)
OSCEOLA County, a Political Subdivision of the State of Florida, Petitioner,
v.
ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, Respondent.
No. 85-678.
District Court of Appeal of Florida, Fifth District.
March 6, 1986.
Rehearing Denied April 16, 1986.
William L. Earl and Elizabeth M. Weaver, of Peoples, Earl & Blank, P.A., Miami, for petitioner.
Vance W. Kidder, Palatka, for respondent.
Clifton A. McClelland, Jr., of Potter, McClelland, Griffith, Jones & Marks, P.A., Melbourne, amicus curiae, for South Brevard Water Authority.
Deborah A. Getzoff, Asst. Gen. Counsel, Tallahassee, amicus curiae, for State of Fla., Dept. of Environmental Regulation.
ORFINGER, Judge.
The issue presented in this petition for writ of prohibition is whether transfer of water from one water management district to another is authorized by law. Put another way, does the Department of Environmental *617 Regulation of the State of Florida (D.E.R.) have the statutory authority to adopt an administrative rule prescribing the procedure to be followed and the guidelines to be observed by the respective water management districts in considering interdistrict water transfers? We answer the question in the affirmative and deny the writ.
The South Brevard Water Authority applied to the St. Johns River Water Management District for a consumptive use permit[1] which would authorize the use, in Brevard County, of water to be drawn from the Holopaw region of Osceola County.[2] Brevard County is completely within the St. Johns River Water Management District, as is a portion of Osceola County. However, the Holopaw region of Osceola County lies within the South Florida Water Management District (South Florida). Osceola County petitions this court for a writ of prohibition to prevent the St. Johns River Water Management District (St. Johns) from considering this consumptive use permit, claiming that an individual water management district lacks jurisdiction under the Florida Water Resources Act to consider a consumptive use permit application relating to water which will be diverted from outside its boundaries.
Petitioner asserts that the issue before the court is whether St. Johns may exercise jurisdiction on resources outside its territorial boundaries, but to state the question thusly virtually requires the conclusion that it may not. The real issue here is whether the Florida Water Resources Act gives D.E.R. the power to authorize such transfers.
Respondent challenges Osceola County's standing to seek this writ. We can dispose of that issue quickly by noting that counties in this state have various statutory duties and responsibilities with respect to planning for water management and conservation, sufficient to give them an interest in any activity of the state or of the agencies of the state as may appear to affect those duties and responsibilities. See, e.g. §§ 163.3161(3), 163.3177(6)(d), 373.196(1), (2) and (3), Fla. Stat. (1985). Osceola County has standing. See Gieger v. Sun First National Bank of Orlando, 427 So.2d 815 (Fla. 5th DCA 1983).
Respondent also asserts that Osceola County must first exhaust its administrative remedies before seeking relief in the courts. Here, prohibition is sought on the assertion that St. Johns lacks jurisdiction to even hear the request for a permit. A persuasive challenge to agency jurisdiction has been held to be a widely recognized exception to the exhaustion doctrine. State, Dept. of Environmental Regulation v. Falls Chase Special Taxing District, 424 So.2d 787 (Fla. 1st DCA 1983). It is necessary, therefore to examine Osceola County's challenge to determine whether it is persuasive on that issue.
The Water Resources Act was enacted in 1972 to provide the state with a comprehensive policy for the management of Florida water. See § 373.016, Fla. Stat. (1985).[3] The authority over water management activities was initially vested in the Department *618 of Natural Resources (D.N.R.) but in 1975 the Florida Environmental Reorganization Act created the Department of Environmental Regulation (D.E.R.) as the centralized agency to implement the state's various environmental programs, including the management of the state's water resources. This centralization was partially effected by transferring D.N.R.'s authority over water management to D.E.R. Chapter 75-22, § 11, Laws of Fla. The D.E.R. was also authorized to adopt an integrated, coordinated plan for the use and development of Florida waters to be known as the State Water Use Plan. See § 373.036(1), Fla. Stat. (1985). Although the amended Water Resources Act gave D.E.R. broad authority over programs affecting the state's water resources, the legislature encouraged delegation of appropriate powers to the regional water management districts. See § 373.016(3), Fla. Stat. (1985).
The Water Resources Act originally established six water management districts. In 1977, the districts were reorganized into five districts. Chapter 77-104, § 113, Laws of Fla. Section 373.219, Florida Statutes, authorizes D.E.R. or the districts' governing boards to require permits for consumptive use of water. Section 373.223(2), Florida Statutes (1985), provides for transfers of water in this manner:
The governing board or the department may authorize the holder of a use permit to transport and use ground or surface water beyond overlying land, across county boundaries, or outside the watershed from which it is taken if the governing board or the department determines that such transport and use is consistent with the public interest, and no local government shall adopt or enforce any law, ordinance, rule, regulation, or order to the contrary.
D.E.R. has adopted Rule 17-40.05, Florida Administrative Code, which covers water transport, and specifically addresses inter-district transfers in this manner:
(1) The transport or use of water across District boundaries shall require approval of each involved District.
(2) In deciding whether the transport and use of water across District boundaries is consistent with the public interest pursuant to Section 373.223, Florida Statutes, the Districts should consider the extent to which:
(a) Comprehensive water conservation and reuse programs are implemented and enforced in the area of need.
(b) The major costs, benefits, and environmental impact have been adequately determined including the impact on both the supplying and receiving areas;
(c) The transport is an environmentally and economically acceptable method to supply water for the given purpose;
(d) The present and projected water needs of the supplying area are reasonably determined and can be satisfied even if the transport takes place;
(e) The transport plan incorporates a regional approach to water supply and distribution including, where appropriate, plans for eventual interconnection of water supply sources; and
(f) The transport is otherwise consistent with the public interest based upon evidence presented.
Petitioner claims that this administrative rule is an unauthorized usurpation of power because D.E.R. was not granted specific authority to approve inter-district diversions of water, nor do the water management districts have independent statutory authorization to approve inter-district movements of water. Petitioner reasons that since the legislature in providing for movement of water across county lines, beyond overlying lands and outside of the watershed from which it is taken, was silent as to inter-district transport, the legislature must have intended that each district would be limited to managing the water resources within its own boundaries and that water could not be moved from one district to another, under any circumstances. We reject this premise.
In relation to D.E.R., the five water management districts are both subordinate and independent. D.E.R. has chosen to retain supervisory authority over many of *619 the regional functions delegated to the districts in order to assure uniformity and maximum effectiveness among the districts. See e.g., § 373.103, Fla. Stat. (1985); Fla. Admin. Code Rule 17-40.10(2)-(4). On the other hand, many powers and duties granted to the water management districts by law appear to be independent of D.E.R. See e.g., § 373.0693, § 373.0697, § 373.083-099, § 373.106, § 373.119, § 373.139, § 373.171, Fla. Stat. (1985). See also Deseret Ranches of Florida, Inc. v. St. Johns River Water Management District, 406 So.2d 1132, 1139 (Fla. 5th DCA 1981), affirmed in part, reversed in part, 421 So.2d 1067 (Fla. 1982). It is conceded that the water management districts do not have independent authority to plan for the inter-district diversion of water. The primary question, then, is whether the water management districts have been properly delegated that authority by D.E.R.
Recognizing that the waters in the state are among Florida's basic resources, the Florida legislature, through Chapter 373, Florida Statutes, "The Florida Water Resources Act," provided a comprehensive statewide plan for the conservation, protection, management and control of state waters. Deseret Ranches, 421 So.2d at 1068. The legislature enacted the Water Resources Act to develop a regulatory framework of managing water resources at both a state and regional level. See § 373.016(3), Fla. Stat. (1985). The individual water management districts do not just promote local or regional interests and policies, but also further the state functions and policies relating to water resource conservation, control, planning and development. Nothing in the Water Resources Act indicates a legislative intent that water management districts operate solely as independent provinces, without regard for statewide concerns. This parochial view is clearly negated by the statute which implements a statewide water management plan. A two-tiered system of state and regional management was perceived by the legislature as the most effective way to conserve and manage the state's total water resources.
Nothing in the Water Resources Act prohibits D.E.R. from allowing inter-district diversions of water. The statutory authority to allow such inter-district diversions of water is necessarily implied in the grant to D.E.R. of statewide power to regulate the management of water resources and by the specific legislative authority to permit the transport and use of water "beyond overlying land, across county boundaries or outside the watershed from which it is taken."[4] § 373.223(2), Fla. Stat. (1985). Political boundaries are artificial divisions that may and sometimes should be transcended when planning for the most beneficial use of our state's water resources. The borders of water management districts are also artificial divisions, and the area on either side of the boundaries of neighboring districts are in the same geographical region.[5] It would be incongruous for the *620 legislature to vest D.E.R. with central authority over the management of the state's water resources while intending for D.E.R. to be restricted in its planning by the regional boundary lines comprising the territories of the districts. We hold that the legislature has impliedly granted to D.E.R. the authority to allow inter-district diversions of water, and such authority is properly delegated to the water management districts.
The Water Resources Act does not give D.E.R. or the water management districts unbridled authority to make statewide water policy decisions. The governor and cabinet, sitting as the Land and Water Adjudicatory Commission, have authority to review any order or rule of a water management district, other than a rule relating to an internal procedure of a district, to ensure consistency with the provisions and purposes of the Florida Water Resources Act. See § 373.114, Fla. Stat. (1985); Griffin v. St. Johns River Water Management District, 409 So.2d 208 (Fla. 5th DCA 1982). Judicial review of a final administrative action regarding water resources is also recognized. See Griffin, supra.
Our holding reflects the legislative intent, expressed in section 373.6161, Florida Statutes (1985), that the Water Resources Act shall be construed liberally for effectuating the purposes described in the Act. The Act clearly mandates consideration of the total water needs in Florida. Cf. Pinellas County v. Lake Padgett Pines, 333 So.2d 472, 479 (Fla. 2d DCA 1976).
The petition for writ of prohibition is
DENIED.
UPCHURCH, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
Simply stated, the issue in this case is whether or not one water management district has jurisdiction to act on a consumptive use permit outside of its statutory boundaries, under the provisions of the Florida Water Resources Act of 1972. The location of the intended use of the water is in the St. Johns Water Management District, but the location of the water to be withdrawn is in the South Florida Water Management District, and further the county from which water is to be withdrawn (Osceola) is different than the county of proposed use (Brevard). I find no express or implied power under that statute for such an inter-district transfer and therefore I would grant the writ of prohibition.
Initially, respondent challenges the standing of Osceola County to file this proceeding. Osceola County has a sufficient interest in the use of the water resources within its boundaries to give it standing to file this petition.[1] Although the Florida Water Resources Act of 1972 gives to the districts and the DER exclusive authority for granting or denying consumptive use permits, section 373.219, Florida Statutes (1983), the counties are required by statute to make plans for and carry out local efforts to conserve and manage the water resources within their boundaries. § 163.3161(3), Fla. Stat. (1983); § 163.3177(6)(d), Fla. Stat. (1983); § 373.196(1), (2) & (3), Fla. Stat. (1983); Ch. 85-55, § 6 Laws of Fla. Further, section 125.01(1), Florida Statutes (1983) also empowers counties to provide and regulate their own water supply and conservation programs, and to perform other acts not inconsistent with the common interest of the people in the county. § 125.01(1)(k) & (w), Fla. Stat. (1983).
Although Osceola County may not directly participate in the permitting process, the legislature clearly intends for counties to play a role in water management. This intended participation, plus the County's concern for the best interest of its citizens regarding conservation of Osceola County's water supply give it sufficient standing in *621 this case to question an unauthorized taking of water beyond the district lines.
Respondents also argue that Osceola County must exhaust its administrative remedies or relief. However, a persuasive challenge to an agency's jurisdiction is a widely recognized exception to the necessity to exhaust administrative remedies. See 2 Cooper, State Administrative Law, 577 (1965); Department of Environmental Regulation v. Falls Chase Special Taxing District, 424 So.2d 787 (Fla. 1st DCA 1982), review denied, 436 So.2d 98 (Fla. 1983).
Respondents rely upon Rule 17-40.05, Florida Administrative Code as the basis for the procedure being challenged in this case. The Rule provides:
The following shall apply to the transfers of water where such transfers are regulated pursuant to Part II of Chapter 373, Florida Statutes:
(1) The transport or use of water across District boundaries shall require approval of each involved District.
(2) In deciding whether the transport and use of water across District boundaries is consistent with the public interest pursuant to section 373.223, Florida Statutes, the Districts should consider the extent to which:
(a) Comprehensive water conservation and reuse programs are implemented and enforced in the area of need.
(b) The major costs, benefits and environmental impact have been adequately determined including the impact on both the supplying and receiving areas;
(c) The transport is an environmentally and economically acceptable method to supply water for the given purpose;
(d) The present and projected water needs of the supplying area are reasonably determined and can be satisfied even if the transport takes place;
(e) The transport plan incorporates a regional approach to water supply and distribution including, where appropriate, plans for eventual interconnection of water supply sources; and
(f) The transport is otherwise consistent with the public interest based upon evidence presented.
However, there is no provision in Chapter 373, Part II, pertaining to consumptive use permits which allows any district to take any action regarding the water resources outside its statutory boundaries defined in section 373.069, Florida Statutes (1983). An agency has only such power as is expressly given or by necessity implied by legislative enactment; it may not increase its own jurisdiction. Department of Environmental Regulation v. Falls Chase Special Taxing District, 424 So.2d 787 (Fla. 1st DCA 1982), review denied, 436 So.2d 98 (Fla. 1983). Under the Act each district is required to plan for, conserve, manage, and protect the water resources in its own district only. § 373.118(2), Fla. Stat. (1983); § 373.216, Fla. Stat. (1983). Although the formulation of a state use plan is contemplated by section 373.036(1), Florida Statutes (1983), the Act does not provide criteria for a supervisory agency to use in making water resource plans on a statewide basis, and no statewide plan has been as yet formulated by any state agency. Maloney, Frank E., Florida Water Law, 213-218 (1980). Therefore, no provision of the Act permits the DER or any district or any other super-agency, to resolve the competing needs and interests of different districts within this state.
The Act contemplates transfers across County lines and watershed areas within the same district. Section 373.223(2), Florida Statutes (1983) provides:
(2) The governing board or the department may authorize the holder of a use permit to transport and use ground or surface water beyond overlying land, across county boundaries, or outside the watershed from which it is taken if the governing board or department determines that such transport and use is consistent with the public interest, and no local government shall adopt or enforce any law, ordinance, rule, regulation, or order to the contrary.
*622 Significantly, transfers outside district lines are not included. Criteria to resolve competing uses and needs for permits within a district are clearly set out by the Act, and are given to each district to resolve. § 373.219(1), Fla. Stat. (1983). However, there are no such criteria for inter-district transfers. Kemp, Deborah J., Interbasin Transfers of Water in Florida, 56 Fla.B.J. 9, 12 (1982). In my view, it is no oversight or accident that inter-district transfers are not expressly provided for in the Act. See Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978).
NOTES
[1] See § 373.219, Fla. Stat. (1985).
[2] As will be demonstrated, infra, it is also necessary for the applicant to seek and secure the approval of the South Florida Water Management District, from where the water will be drawn.
[3] That the legislative intent was to adopt a statewide policy of water management is clearly demonstrated by section 373.016(3), which states:

The Legislature recognizes that the water resource problems of the state vary from region to region, both in magnitude and complexity. It is therefore the intent of the Legislature to vest in the Department of Environmental Regulation or its successor agency the power and responsibility to accomplish the conservation, protection, management, and control of the waters of the state and with sufficient flexibility and discretion to accomplish these ends through delegation of appropriate powers to the various water management districts. The department may exercise any power herein authorized to be exercised by a water management district; however, to the greatest extent practicable, such power should be delegated to the governing board of a water management district. [Emphasis added].
[4] The record shows without dispute that in some cases, the boundary lines of the water management districts divide counties, so that one part of a county is within one district and the other part of the county is within an adjacent district. For example, parts of Orange and Osceola counties lie within St. Johns, and the remainder of said counties lie within South Florida. If we adopt the view of petitioner that inter-district transfers are prohibited, then transfers within the same county would be prohibited if the county was divided by a district line and water was to be moved across the line, and we find nothing in the statute to sustain that position. On the contrary, in the State Comprehensive Plan, section 2(8)(b)3, Chapter 85-57, Laws of Florida, for the purpose of implementing the goal of assuring the availability of an adequate water supply for all competing uses, the legislature adopted as a policy the encouragement of the development of local and regional water supplies within water management districts "instead of transporting surface water across district boundaries." This policy gives additional impetus to respondent's position that the legislature did not intend to prohibit inter-district diversions of water.
[5] St. Johns' response also indicates that the actual bounds of the watershed of the St. Johns River extend westward beyond the legislative boundary of the district, and physically extend into the Holopaw region of Osceola County, the area near where the wellfield of concern here would be located, if properly approved.
[1] See Gieger v. Sun First National Bank of Orlando, 427 So.2d 815 (Fla. 5th DCA 1983); Argonaut Ins. Co. v. Commercial Standard Ins. Co., 380 So.2d 1066 (Fla. 2d DCA), review denied, 389 So.2d 1108 (Fla. 1980).